UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff(s),<br><br>v.<br><br>JOHN THOMAS, et al.,<br><br>Defendant(s). | Case No. 2:15-CR-62 JCM (CWH)<br><br>ORDER |

Presently before the court is defendant Louis Matthews's motion for a new trial. (ECF No. 179). The government has filed a response, (ECF No. 198) and defendant has filed a reply (ECF No. 199).

**I.   Introduction**

On July 22, 2015, the government filed a superseding indictment charging defendant with conspiracy to possess a controlled substance with intent to distribute (marijuana), a violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(D), and use of a firearm during, in relation to, and in furtherance of a drug trafficking crime (resulting in death), a violation of 18 U.S.C. §§ 924(C)(1)(a), 924(j), and 2. (ECF No. 56).

Defendant's seven-day jury trial began on October 3, 2016, and concluded on October 12, 2016. (ECF No. 155). On the latter date, the jury returned its first verdict, which supposedly was unanimous. (ECF No. 185 at 3–4). However, a subsequent poll of the jury made at the defendant's request showed that a juror ("juror no. 8") disagreed with that result. (*Id.* at 5). Consequently, the court ordered the jurors to continue their deliberations. (*Id.* at 6).

At 2:10 p.m. that same day, the court informed the parties that juror no. 8 "ha[d] broken down and was unable to continue deliberations." (*Id.* at 21). Juror no. 8 had left the jury room

**James C. Mahan**
**U.S. District Judge**

sobbing, and the judge immediately separated juror no. 8 from the rest of the jury. (*Id.* at 21, 24, 40). Noting that juror no. 8 was "very upset," the court asked that juror whether she could continue deliberating. (*Id.* at 41). That juror then told the judge that she was unable to continue deliberations and wanted to be excused. (*Id.*).

An alternate juror replaced juror no. 8, and the jury was instructed to start deliberations anew. (*Id.* at 31) ("[Alternate juror] has not been here for what's happened previously, so it's necessary to start deliberations all over again with [alternate juror] and get his input . . . ."). The newly composed jury ultimately found the defendant guilty on both charged counts. (ECF Nos. 173, 185). Nine days later, defendant filed his timely motion for a new trial. (ECF No. 179).

Defendant's motion asserts four bases for this court to vacate the verdict, declare a mistrial, and set a new trial date: (1) polling all members of the jury unnecessarily identified a single holdout juror; (2) the court conducted an impermissible *ex parte* interview of juror no. 8; (3) juror no. 8 was dismissed by the court after the *ex parte* communication indicated that she was unable to deliberate; and (4) cumulative error demands a mistrial finding. (ECF No. 179).

The government responded, arguing that: (1) polling the remaining jurors after juror no. 8 dissented from the verdict was neither erroneous nor coercive; (2) the court's *ex parte* communication with juror no. 8 was not prejudicial to the defendant; (3) the court had good cause and exercised its discretion to dismiss juror no. 8; and (4) there is no indication that any alleged error impacted the jury verdict. (ECF No. 198).

Defendant replied that the government's first argument does not adequately consider current case law, a mistrial rooted in *ex parte* communication does not require actual prejudice, and there was a "reasonable probability" that juror no. 8's dismissal was based on that juror's view of the case. (ECF No. 199 at 2–5).

## II. Legal Standard

Federal Rule of Criminal Procedure 33(a) states: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." *See also United States v. Andrade*, 993 F. Supp. 2d. 1269, 1276 (D. Nev. 2014). The district court may

exercise its discretion to grant a new trial.  *See United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981).

### III.   Discussion

*a.  Polling the Jury*

A district court judge and the trial parties have an "absolute right to have the jury polled after it has returned its verdicts." *United States v. Nelson*, 692 F.2d 83, 85 (9th Cir. 1982).  Federal Rule of Criminal Procedure 31(d) governs the jury polling process: "After a verdict is returned but before the jury is discharged, the court must on a party's request . . . poll the jurors individually."  Indeed, "Rule 31(d) requires only that jurors be placed in a situation (i.e., polling in open court) that allows them to be free of jury-room coercion." *United States v. Williams*, 990 F.2d 507, 512 (9th Cir. 1993).  Further, "[i]f the poll reveals a lack of unanimity, the court may direct the jury to deliberate further or may declare a mistrial and discharge the jury."  Fed. R. Crim. P. 31(d).

Criminal defendants in a jury trial have the right to a verdict untainted by coercion.  *See United States v. McCaleb*, 552 F.3d 1053, 1057 (9th Cir. 2009).  "Coercion can occur when, for example, a district court tells a jury that it must reach a decision, a district court polls a jury before it reaches a verdict, or a special verdict form reformulate[s] the elements of the crime . . . ." *McCaleb*, 552 F.3d at 1057–58 (citations omitted) (internal quotation marks omitted).

Defendant supports this argument by citing to cases indicating the fact-specific nature of the question of jury coercion by a judge's conduct.  (ECF No. 179).  However, those cases are factually distinguishable from the instant case.

Here, the court made no specific inquiry for the numerical division amongst the jurors, who also never indicated that they had reached a deadlock.  This factual distinction removes the persuasive force of defendant's citation to *Jenkins v. United States*, 380 U.S. 445, 446 (1965) (involving a trial judge's refusal to accept a deadlocked jury's conclusion); *Brasfield v. United States*, 272 U.S. 448, 449–50 (1926) (discussing the trial judge's questioning of the jury foreman regarding the division of a deadlocked jury); *Burton v. United States*, 196 U.S. 283, 304 (1905) ("I would like to ask the foreman of the jury how you are divided. I do not want to know how many stand for conviction, or how many for acquittal, but to know the number who stand the one way

James C. Mahan
U.S. District Judge

and the number who stand another way."); *Locks v. Sumner*, 703 F.2d 403, 405 n.1 (9th Cir. 1983) ("[J]ust on a numerical basis only without telling me how many for one side or how many for another, can you give me the standing of the jury at the last ballot."); and *Jordan v. United States*, 22 F.2d 966, 966 (9th Cir. 1927) ("Is the jury about evenly divided? You can answer that yes or no.").

Although defendant attempts to preempt the argument that a court's jury poll is not the same as requesting information about the numerical split of a jury, he does not provide citation to any legal authority, binding or otherwise, to support his effort. In sum, the defendant's argument that the court's continued polling of the jury was coercive is without legal force. *See also Payne v. Tennessee*, 501 U.S. 808, 827 (1991) (acknowledging that although "[s]tare decisis is not an inexorable command," the doctrine of "[s]tare decisis is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.").

The court's poll of the entire jury is also supported by case law's articulation of policy. The Ninth Circuit in *Harrison v. Gillespie*, voiced some concerns regarding judges' potentially coercive actions when interacting with jurors that have not produced a final verdict. *See* 640 F.3d 888, 902–903 (9th Cir. 2011) (collecting cases).

First, a judge should not appear to overtly or tacitly support a particular verdict, even if done unintentionally. *See id.* at 903. In that circumstance, the judge risks "lend[ing] his prestige to the adherents of [a jury] faction," which may impact the jury's deliberations. Note, *On Instructing Deadlocked Juries*, 78 Yale L.J. 100 (1968); *see also Harrison*, 640 F.3d at 903.

Second, jurors should not lose the opportunity to "gain new insights through further deliberations" because of their misunderstanding of the role of a "tentative vote" compared to an "irrevocable final vote." *Id.* at 903 (quoting *United States v. DiLapi*, 651 F.2d 140, 147 (2d Cir. 1981) (internal quotations omitted)). A judge should act in a manner permitting the jury to accomplish a full deliberation of a trial's merits. *See id.* at 903–04. "This concern about finality is not merely a product of rigid adherence to the proper forms of jury procedure. Rather, it is a result of the fundamental importance that the jury reach a final, collective decision after full

deliberation of the issues." *Id.* at 904.  Indeed, "[t]he importance of the deliberative process cannot be overstated." *Id.* (citing *Nelson*, 692 F.2d at 84–85).

After the relevant jury poll had concluded in this case, the court stated:

> Thank you. All right. I'm going to send the jury back out to continue deliberating then. The verdict has to be something that everybody agrees to, so I'm going to send the jury out and instruct you to keep deliberating. All right? Show the jury out. We will be in recess.

(ECF No. 185 at 5–6).  Essentially, the court first told the jurors to continue deliberating and then reminded them that the verdict must be unanimous.

The Ninth Circuit's first *Harrison* concern is not found here.  Federal Rule of Criminal Procedure 31(d) expressly authorizes a judge to order further deliberations if a "poll reveals a lack of unanimity."  The rule does not require that multiple jurors must dissent from the verdict for the court to exercise this authority.  *See id.*  Furthermore, if the remaining four jurors (nos. 9, 10, 11, and 12) indicated dissent from the guilty verdict, the court must consider further inquiry and the possibility of declaring a mistrial.  *See Rogers v. United States*, 609 F.2d 1315, 1317 (9th Cir. 1979) (considering a trial judge's need to ask a jury whether a verdict could be reached, in light of jury deadlock and subsequent mistrial).

The advisory committee notes for Rule 31 acknowledge that a trial judge may exercise discretion as to how jurors are polled.  Fed. R. Crim. P. 31 (discussing the 1998 amendments).  In fact, that committee recognized that individual polling appeared to be the norm.  *See id.* (citing *United States v. Miller*, 59 F.3d 417, 420 (3rd Cir. 1995) (collecting cases)).  Rule 31 is silent as to whether a trial judge should stop immediately after the first indication of a dissenting juror.  *See id.*

Nor is the second statement—a reiteration of jury instruction number 25—coercive under the first *Harrison* concern.  *See* (ECF No. 172).  Jury instruction number 25, reflecting Ninth Circuit Model Criminal Jury Instruction 7.1, states *inter alia*: "Your verdict, whether guilty or not guilty, must be unanimous." (*Id.* at 29).  The court's repetition of such a fundamental instruction when there has been no indication of deadlock, even after one juror has disagreed with the verdict upon being polled, does not create the appearance of a preferred outcome.

**James C. Mahan**
**U.S. District Judge**

- 5 -

Otherwise, a judge would be barred from mentioning this critical instruction after any juror poll reveals dissent. Indeed, an unexplained order to continue deliberations may run afoul of the *Harrison* concern regarding the risk of a jury adopting perceived judicial leanings because a judge's failure to tell a jury why it must continue deliberating could invite juror speculation regarding the judge's intentions.

The court's actions also support the policy underlying the second *Harrison* concern. As the poll unequivocally revealed that there was no unanimous verdict, the court exercised its authority pursuant to Federal Rule of Criminal Procedure 31(d) to ensure that defendant received "a final, collective decision after full deliberation of the issues." *Harrison*, 640 F.3d at 904.

For these reasons, conducting a complete jury poll, even though a juror rejected the verdict, was not coercive in this case.

   b. *Ex parte communication with a juror*

While *ex parte* communications between a juror and a trial judge may be concerning, "the Constitution does not require a new trial every time a juror has been placed in a potentially compromising situation . . . [because] it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Rushen v. Spain*, 464 U.S. 114, 118 (1983) (quoting *United States v. Morrison*, 449 U.S. 361, 364 (1981)) (internal quotations omitted).[1] However, a judge should avoid a "coercive atmosphere." *United States v. Akbar*, 698 F.2d 378, 380 (9th Cir. 1983) (holding that a judge who had requested the identity of jury members asking for testimony during deliberations did not act coercively).

The circumstances of an *ex parte* contact are critical because if no "fact in controversy or . . . law applicable to the case" is involved in that contact, defendant must demonstrate that he suffered "actual prejudice" as a result of the communication. *United States v. Madrid*, 842 F.2d 1090, 1093 (9th Cir. 1988). Although the juror that spoke with the court here was the same individual who dissented at the first jury poll, the court indicated to the parties that the *ex parte*

---

[1] If an *ex parte* communication at issue involves a contemporaneous trial, "the trial judge generally should disclose the communication to counsel for all parties." *Rushen*, 464 U.S. at 118. In fact, the court disclosed the nature and content of its interaction with juror no. 8 to the parties. *See* (ECF No. 185).

**James C. Mahan**
**U.S. District Judge**

- 6 -

1  communication did not cover the substance of the case.  *See* (ECF No. 185).  Indeed, if a juror's
2  *ex parte* communication with a trial judge pertains only to that juror's wish to be excused and not
3  the circumstances of the case, then there is "no reasonable possibility of prejudice from the
4  exchange" that would "impair [defendant's] right to a fair trial."  *Smith v. Curry*, 580 F.3d 1071,
5  1085 (9th Cir. 2009).

6  In this case, the court's *ex parte* communication occurred because, as the court indicated
7  to the parties, "[the juror] ha[d] broken down and was unable to continue deliberations. So [the
8  juror] was crying and sobbing."  (ECF No. 185 at 21).  The juror had left the jury room, crying,
9  and told the court security officer that she could not continue.  (*Id.* at 24).  The court "separated
10  [the juror] from the rest of the jury."  (*Id.* at 21).  The court asked the juror whether she was able
11  to continue deliberating because the juror appeared highly emotional and had stated that "[she]
12  can't do this."  (*Id.* at 41).  The juror told the judge that she would like to be replaced by an alternate
13  juror, which was subsequently done.  (*Id.* at 30–31, 41).

14  The defendant's arguments for a new trial under this theory are unpersuasive.  *Shields v.
15  United States*, involves a judge's *ex parte* supplemental instruction to a jury that had sent a note to
16  chambers informing the judge of the jury's difficulty in reaching a verdict as to three out of eight
17  defendants.  273 U.S. 583, 584–587 (1927).  In the present case, neither a supplemental instruction
18  nor any communication from the jury to the judge that a deadlock was in place is at issue.
19  Therefore, that ruling does not control here.

20  Reliance on *Rodgers v. United States*, is similarly inapposite.  *See generally* 422 U.S. 35
21  (1975).  There, the Court reversed a conviction because a jury's inquiry to a judge whether a
22  particular sentence of "guilty as charged with extreme mercy of the [c]ourt" was acceptable after
23  two hours of deliberation and the judge's affirmative answer "strongly suggest[ed]" that the
24  judge's answer had a material influence on the jurors in that case.  *Id.* at 36–37, 40–41.  Here, there
25  is no issue regarding a court's potential influence on a "compromise" verdict.  *Id.* at 40.  Therefore,
26  *Rodgers* does not apply here.

27  Defendant's argument appears to place the greatest weight on *United States v. United
28  States Gypsum Co.*, wherein the Court considered a trial judge's *ex parte* meeting with a jury

**James C. Mahan**
**U.S. District Judge**

- 7 -

foreman.[2] 438 U.S. 422, 459–462 (1978). There, the Court held that the appellate court "would have been justified in reversing" convictions because of the possibility for erroneous or imprecise jury instructions resulting from an *ex parte* meeting between a trial judge and the jury foreman. *See id.* ("Counsel were thus denied any opportunity to clear up the confusion regarding the judge's direction to the foreman, which could readily have been accomplished by requesting that the whole jury be called into the courtroom for a clarifying instruction."). No such issue of garbled jury instruction is present here.

Defendant's reference to the Model Code of Judicial Conduct Rule 2.9 also does not support his motion. Indeed, the court's *ex parte* communication with a visibly upset juror who left the jury room during deliberations—solely regarding that juror's inability to continue deliberating—is an emergency circumstance that reasonably would produce no advantage to either party in the case. *See* (ECF No. 185). Indeed, although Federal Rule of Criminal Procedure 23(b) permits a jury of eleven people to return a verdict if one juror is dismissed with good cause after the trial has begun, the court opted to seat an alternate juror. (ECF No. 185 at 28).

In light of this discussion, defendant has not demonstrated that he suffered "actual prejudice" as a result of the court's *ex parte* communication with a juror who had indicated an inability—without any discussion of the merits of the case—to proceed with deliberations. *See Madrid*, 842 F.2d at 1093. Accordingly, this argument in favor of a new trial fails.

c. *Dismissal of juror no. 8*

"The decision to excuse a juror is committed to the district court's discretion . . . ." *United States v. Beard*, 161 F.3d 1190, 1194 (9th Cir. 1998). The parties disagree on the appropriate standard to apply for the dismissal of a juror; the government asserts that *Perez v. Marshall*, presents the proper standard in this case while the defendant argues that *United States v. Symington*, should apply. *See* 195 F.3d at 1092; 119 F.3d 1422 (9th Cir. 1997); *see also* (ECF Nos. 179, 198).

---

[2] In that case, the trial judge had twice delivered a modified *Allen* charge before the *ex parte* meeting. *See United States Gypsum Co.*, 438 U.S. at 459–460. No *Allen* charge was given in this case; there was no jury deadlock.

James C. Mahan
U.S. District Judge

- 8 -

*Perez* is inapplicable to the present case because a trial judge's dismissal of a juror is entitled to "special deference on habeas review," and *Symington* expressly indicated that the procedural posture differences between the question of juror dismissal in the typical case and habeas review "makes *Perez* inapposite." *See* 195 F.3d at 1086 n.3. (citation omitted) (internal quotations omitted).

*Symington* instead instructs that a court consider whether a reasonable possibility exists that the juror's "position on the merits of the case" was the "impetus" for dismissal. 195 F.3d at 1087–88. In fact, defendant argues that "the only logical conclusion" from an analysis of juror no. 8's emotional state was that the juror "was being aggressively ganged up on during deliberations because she would vote to acquit." (ECF No. 179 at 12).

However, there is no evidence on the record to find a reasonable possibility that the events leading to juror no. 8's dismissal originated from that juror's view of the evidence presented in this case.[3] Further, there is no evidence on the record to support defendant's entirely speculative claim. Indeed, defendant cites none. (*Id.*).

What the record first shows is that juror no. 8 asked the court on the sixth day of trial with no elaboration or explanation if she could be replaced by an alternate juror.[4] (ECF No. 189). The court responded "I'd say no," and juror no. 8 replied "okay." (*Id.* at 3).

On day seven of the trial, juror no. 8 indicated in a jury poll that she dissented from the jury's first verdict. (ECF No. 185 at 5). At that time, the court ordered the jury to continue its deliberations. (*Id.* at 5–6).

Later that day, juror no. 8 asked the court in the presence of counsel whether the jury had "to come to an agreement of guilty or not guilty" on the indictment or the charge. (*Id.* at 16). The court indicated that an agreement had to be found "on the charges of the indictment" and that the indictment was the means of bringing the charges. (*Id.*). There was no indication that the jury

---

[3] When considering this question, "[a] court may not delve deeply into a juror's motivations because it may not intrude on the secrecy of the jury's deliberations." *Symington*, 195 F.3d at 1086 (quoting *United States v. Brown*, 823 F.2d 591, 596 (D.C. Cir. 1987)) (illustrating a trial judge's difficulty when attempting to understand events occurring within the jury's room).

[4] Counsel had waived their presence to that evening's jury dismissal. (ECF No. 189 at 2).

was dissatisfied with that answer. *See* (*id.*) (asking the jury whether its questions had been resolved).

Finally, juror no. 8 emotionally broke down and had the *ex parte* communication with the court, as discussed above. (*Id.* at 21, 41). In fact, the government sought clarification if "the [c]ourt excused her not because she indicated which way she was going to vote one way or the other, but because she stated to the [c]ourt, in the [c]ourt's presence, that she could not continue with deliberations," which this court confirmed. (*Id.* at 42).

These facts provide little support for an inference that juror no. 8's view of the merits of the case was the origin of the chain of events leading to her dismissal. Indeed, the facts here are far less probative of this question than those in *Symington*. There, a juror was dismissed for being "either unwilling or unable to deliberate with her colleagues" when "[t]he statements of some jurors indicated that their frustration with [the dismissed juror] may have derived more from their disagreement with her on the merits of the case . . . ." *See Symington*, 195 F.3d at 1084. There is no such foundation for a similar inference here.

In sum, defendant has failed to indicate how juror no. 8's dismissal was improper. Therefore, this argument for a new trial does not succeed.

    d. *Cumulative error*

Defendant finally asserts that the doctrine of cumulative error should apply because the three aforementioned issues, when considered together, impaired the defendant's right to a fair trial, even if they individually did not violate defendant's constitutional rights. (ECF No. 179).

However, this doctrine's application requires the presence of error. *See Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007) ("The cumulative effect of multiple errors can violate due process even where no single error rises to the level of a constitutional violation or would independently warrant reversal."). The grounds that defendant has asserted for invoking this doctrine have all been discussed above, and no error has been established in any of those instances.

Moreover, defendant's assertion that the government concedes this argument is incorrect. *See* (ECF No. 179). The government contests this characterization, (ECF No. 198) and the record

**James C. Mahan**
**U.S. District Judge**

similarly does not support defendant's statement. (ECF No. 185). Therefore, this argument also fails.

### IV. Conclusion

Defendant has failed to show that the record and applicable law adequately support his motion for a new trial. Accordingly, this court will not exercise its discretion to grant defendant's motion. *See Pimentel*, 654 F.2d at 545; *see also* (ECF No. 179). Finally, the interest of justice is not harmed by this result. *See* Fed. R. Crim. P. 33(a).

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the defendant's motion to declare mistrial and grant new trial (ECF No. 179) be, and the same hereby is, denied.

DATED December 19, 2016.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**

- 11 -