# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:15-cr-00062-APG-DJA |
| Plaintiff | **Order Denying Motion to Vacate Under 28 U.S.C. § 2255** |
| v. | [ECF No. 438] |
| LOUIS MATTHEWS, | |
| Defendant | |

A jury convicted defendant Louis Matthews of conspiracy to possess marijuana with intent to distribute and use of a firearm during and in relation to a drug trafficking crime resulting in death. ECF No. 173. Judge Mahan sentenced Matthews to consecutive terms of ten years and life imprisonment. ECF No. 213. Matthews appealed, and the Ninth Circuit reversed. ECF Nos. 218; 248. Following the remand, Judge Mahan recused and the case was reassigned to me. ECF No. 272. A second jury convicted Matthews of the same charges on retrial. ECF No. 339. I sentenced Matthews to 60 months and life, to run consecutively. ECF No. 360.

Matthews again appealed. ECF No. 361. The Ninth Circuit affirmed, concluding (1) there was "sufficient evidence of a conspiracy between Matthews and [co-defendant John] Thomas to possess marijuana with intent to distribute," (2) "there was sufficient evidence to support the firearm conviction," and (3) the jury instructions "adequately covered Matthews's buyer-seller theory." ECF No. 411.

Matthews now moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. He raises seven grounds:

(1) there was insufficient evidence to prove the conspiracy charged in the indictment;

(2) there was insufficient evidence to support the firearm charge;

(3) I erred by refusing his requested jury instruction on the buyer-seller relationship, and the instruction I gave fails to state that agreement is an element that must be proved;

(4) his Sixth Amendment confrontation clause right was violated because he did not get to cross-examine his co-defendants about new deals they received for their testimony at his second trial, could not tell the jury the length of his co-defendants' sentences, and could not question co-defendant Julio Nunez about Nunez's felony sex crimes;

(5) his counsel was ineffective because counsel did not question several witnesses, slept two days of trial, did not respond to the government's jury instructions, did not request a multiple conspiracy instruction that Matthews wanted, and did not subpoena witnesses Matthews wanted;

(6) there was a variance between the indictment and the proof at trial because the indictment charged a conspiracy to distribute drugs, but the proof was that Matthews and Thomas conspired to rob the drug dealers; and

(7) "duplicity."

ECF No. 438.

The United States responds that grounds 1-3 and 6 are precluded because Matthews raised those issues on direct appeal. ECF No. 452. The government contends claims 4 and 7 are procedurally defaulted because they were not raised on direct appeal and Matthews cannot show cause to excuse the default or prejudice. Alternatively, the government contends the defaulted claims and the ineffective assistance of counsel claim fail on the merits. Specifically, the government argues that ground 4 fails because Thomas and Nunez received no new deals to testify at Matthews' retrial. The government contends ground five fails because Matthews' attorney's decision not to question certain witnesses was a strategic decision and Matthews

identifies no prejudice; his attorney was active during the trial; his attorney offered a jury instruction and participated in the jury instruction conference; and he can show no prejudice from the other alleged failures. Finally, the government asserts that there is no explanation as to what Matthews means by "duplicity." The government contends that I should decide Matthews' motion without an evidentiary hearing and that I should deny a certificate of appealability.

Because Matthews raised issues related to his attorney's representation, I ordered former counsel Mace Yampolsky to respond to Matthews' assertions and for the parties to file supplemental briefs. ECF No. 456. Yampolsky filed an affidavit in which he denied falling asleep at trial. ECF No. 459 at 1. Yampolsky stated that he did not cross-examine witnesses when he believed there would be no benefit, such as if the witness' testimony did not hurt Matthews' case or did not mention Matthews. *Id.* Yampolsky stated that the questions Matthews wanted him to ask of these witnesses were not "warranted." *Id.* Yampolsky stated he did not subpoena witness because he thought "it was inappropriate." *Id.* For example, Yampolsky did not call Najeeb Rahman because Rahman has been convicted of numerous felonies involving fraud and dishonesty. *Id.* at 1-2.

I ordered Yampolsky to file a supplemental affidavit to address Matthews' assertions:

      1. That Matthews requested Yampolsky to ask for a multiple conspiracy instruction. *See* ECF No. 438 at 11.
      2. That Yampolsky failed to subpoena witnesses Patsy Thomas, who is Matthews' aunt; Wet Thomas (unclear if that is the proper spelling), who is John Thomas's uncle; and Matthews' boss at Tee's Auto Body (who Matthews does not identify by name). *See* ECF No. 454 at 8.
      3. That Matthews wanted to testify but Yampolsky had no questions ready. *Id.*
      4. That Yampolsky never visited Matthews to discuss trial strategy. *Id.*
      5. That Yampolsky never tried to negotiate a deal for Matthews. *Id.*

ECF No. 460 at 1. Yampolsky provided a supplemental affidavit that stated:

1.  Mr. Matthews['] belief that [a] multiple conspiracy instruction would have advanced a defense theory was not shared by counsel.  To my recollection, Mr. Matthews['] multiple conspiracy argument was novel and unsupported by case law.

2.  Mr. Matthews worked "under the table" on an intermittent and sporadic basis at Tee's Auto Body Shop.  Personnel were unable to verify dates and/or hours of employ.  Similarly, the other lay witnesses would not have helped based on our investigation.

3.  Yes, credibility, exposure to cross-examination, temperament, etc.

4.  On dates March 5, 2019 and April 18, 2019[, m]y partner Jason Margolis and I visited Mr. Matthews[.]

5.  On October 25, 2018[,] there was a deal on the table of "No more than 20 years."  Mr. Matthews rejected it[.]  He then filed several pro-per Motions to Dismiss various counts of prosecution misconduct and to correct illegal sentences.  Negotiations then stalled.

ECF No. 461 at 1-2.

In its supplemental brief, the Government objects because Matthews raises some of these issues for the first time in his reply brief. ECF No. 465.  The Government argues that for those issues Matthews raised in his initial petition, Yampolsky's affidavits show Matthews has no viable ineffective assistance claims.

**A.  Issues Raised on Direct Appeal**

"Section 2255 may not be invoked to relitigate questions which were or should have been raised on a direct appeal from the judgment of conviction." *Hammond v. United States*, 408 F.2d 481, 483 (9th Cir. 1969).  Consequently, a petitioner cannot raise in his § 2255 motion a claim that he raised on direct appeal, "absent a showing of manifest injustice or a change in the law." *Polizzi v. United States*, 550 F.2d 1133, 1135 (9th Cir. 1976).  A claim for relief is the same as one raised on direct appeal "if the basic thrust or gravamen of the legal claim is the same, regardless of whether the basic claim is supported by new and different legal arguments." *Molina v. Rison*, 886 F.2d 1124, 1129 (9th Cir. 1989) (simplified).  A newly raised issue is a new claim

1  only if it "is itself a ground for relief, as opposed to being merely a supporting argument or

2  predicate step to a larger, basic claim." *Id.* (emphasis omitted).

3         On his direct appeal, Matthews raised the issues in counts 1-3 and 6, and the Ninth

4  Circuit decided those issues against him. *See* ECF No. 411; *U.S. v. Matthews*, 9th Cir. Case No.

5  19-10281, Dkt. No. 15 (appellant's opening brief).  The Ninth Circuit affirmed Matthews'

6  conviction, ruling that: (1) "[t]here was sufficient evidence of a conspiracy between Matthews

7  and Thomas to possess marijuana with intent to distribute;" (2) "there was sufficient evidence to

8  support the conspiracy conviction, [so] there was sufficient evidence to support the

9  firearm conviction;" and (3) the jury instructions "adequately covered Matthews's buyer-seller

10 theory." ECF No. 411.  Matthews cannot relitigate these issues through a § 2255 motion.  I

11 therefore deny his motion based on these grounds.

12         **B.  Defaulted Claims**

13         "Habeas review is an extraordinary remedy and will not be allowed to do service for an

14 appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quotation omitted).  Consequently,

15 "where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the

16 claim may be raised in habeas only if the defendant can first demonstrate either cause and actual

17 prejudice, or that he is actually innocent." *United States v. Ratigan*, 351 F.3d 957, 964 (9th Cir.

18 2003) (simplified).  Procedural default is an affirmative defense that the government must raise

19 and establish. *United States v. Werle*, 35 F.4th 1195, 1201-02 (9th Cir. 2022).  Once it does so,

20 the burden shifts to the defendant to demonstrate cause and prejudice or actual innocence. *Id.*

21 "Only if the record conclusively establishes the defendant cannot overcome the procedural

22 default, may the district court deny the petition without a hearing." *Id.* at 1202 (citing 28 U.S.C.

23 § 2255(b)).

1    To demonstrate cause, the defendant "must show that some objective factor external to

2  the defense impeded his adherence to the procedural rule." *United States v. Skurdal*, 341 F.3d

3  921, 925 (9th Cir. 2003) (quotation omitted).  For example, cause may exist "where the claim

4  rests upon a new legal or factual basis that was unavailable at the time of direct appeal, or where

5  interference by officials may have prevented the claim from being brought earlier." *United States*

6  *v. Braswell*, 501 F.3d 1147, 1150 (9th Cir. 2007) (quotation omitted).  Additionally, cause may

7  be shown by demonstrating ineffective assistance of appellate counsel or a total lack of appellate

8  counsel. *Skurdal*, 341 F.3d at 925-26.  To show prejudice, Matthews must demonstrate "not

9  merely that the errors at trial created a possibility of prejudice, but that they worked to his actual

10  and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."

11  *Braswell*, 501 F.3d at1150 (simplified).

12    To establish actual innocence, Matthews must show that "in light of all the evidence, . . .

13  it is more likely than not that no reasonable juror would have convicted him." *Ratigan*, 351 F.3d

14  at 965 (quotation omitted).  Actual innocence "means factual innocence, not mere legal

15  insufficiency." *Bousley*, 523 U.S. at 623.

16    The government has shown that Matthews did not raise the issues in grounds 4 and 7 on

17  direct appeal.  Matthews argues in reply that he is actually innocent, but his protestations of

18  innocence are insufficient to meet his burden. *See* ECF No. 411 (Ninth Circuit ruling that the

19  "evidence was more than sufficient for a rational juror to conclude that Matthews and Thomas

20  agreed to rob the sellers of (and thus possess) marijuana with the intent to later distribute it").  It

21  was for the jury to decide whether to believe the co-defendants' testimony that Matthews

22  conspired with Thomas, was at the scene, and shot the victim. *See United States v. Tam*, 240

23

6

F.3d 797, 806 (9th Cir. 2001) ("Absent facial incredibility, it is not [the court's] role to question the jury's assessment of witness credibility.").

Matthews does not argue cause for his procedural default.  He does not identify any objective factor external to the defense that impeded him from asserting these claims on direct appeal.  He does not contend that his defaulted claims rest on a new legal or factual basis that was unavailable at the time of direct appeal, or that any officials interfered to prevent him from raising the claims.[1]  Nor does he argue his appellate counsel, who was different than his trial counsel,[2] was ineffective.  As discussed below, he also does not establish prejudice.

### 1. Ground Four

In ground four, Matthews asserts that his Sixth Amendment Confrontation Clause right was violated because he was not able to cross-examine his co-defendants about new deals they received for their testimony at his second trial, could not tell the jury the length of his co-defendants' sentences, and could not question co-defendant Julio Nunez about felony sex crimes.

The Sixth Amendment confrontation clause "guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him." *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986) (quotation omitted).  This right includes the right to cross-examination. *Id.* at 678-79.  However, "trial judges retain wide latitude insofar as the Confrontation Clause is

---

[1] The only issue that he suggests could not have been raised on direct appeal is his argument that Thomas received a new deal for testifying at Matthews' second trial.  After Matthews filed his notice of appeal, Thomas filed a motion to reduce his sentence. ECF No. 369.  I granted the motion and reduced Thomas's sentence to time served on November 20, 2019. ECF No. 389. Matthews filed his reply brief before the Ninth Circuit on December 18, 2020. *U.S. v. Matthews*, 9th Cir. Case No. 19-10281, Dkt. No. 36.  In that brief, Matthews raised the issue that he "was not informed about Thomas' new cooperation deal and was unable to cross-examine [Thomas] about it." *Id.* at 7 n.1.  Consequently, Matthews could have moved to add this claim to his direct appeal (rather than raising it in a footnote in a reply brief).  Regardless, there is no evidence that Thomas received a second deal.

[2] *See* ECF No. 359 (appointing new counsel for Matthews' appeal).

concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* at 679.  Thus, although "the Confrontation Clause guarantees an opportunity for effective cross-examination," it does not require "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* (emphasis omitted).

Matthews' Sixth Amendment Confrontation Clause right was not violated because his co-defendants did not receive new deals for their testimony at his second trial. *See* ECF Nos. 295 at 7-8 (government representing that Thomas, Nunez, and Angel Juarez testified at the first trial under "the same cooperation agreements that remain in effect for this trial"); 374 at 77-78 (Thomas testifying he received a benefit under his original plea agreement for testifying); 386 at 3 (government representing that Thomas testified at the second trial without any promises of benefits or leniency); 399 at 279 (Nunez testifying no promises were made to him for testifying at the retrial).

As for the evidentiary issues, Thomas has not shown that I erred, much less that the error was so prejudicial as to infect his entire trial with error of constitutional dimensions.  The government filed a motion *in limine* to preclude reference at trial to the sentences Matthews' co-defendants received or to the nature of Nunez's prior felony convictions for sex offenses. ECF No. 295.  Matthews opposed the motion. ECF No. 306.  I ruled that Matthews would be able to question his co-defendants about their cooperation agreements under which they would receive favorable treatment for testifying, but I would not allow questioning on the actual time the co-defendants would receive because that "gets into the area where it causes the jury to think about punishment to be imposed against this defendant." ECF No. 397 at 7.  So, I precluded the

defense from getting "into the number of years or months, whatever it was." *Id.* at 12; *see United States v. Larson*, 495 F.3d 1094, 1105 (9th Cir. 2007) (en banc) (acknowledging that "the Government has an interest in preventing a jury from inferring a defendant's potential sentence"). Matthews was allowed to ask Nunez about the fact that there was a mandatory minimum for the crime Nunez pleaded guilty to and that, because Nunez cooperated with the government, he received a sentence below that mandatory minimum. ECF No. 399 at 276; *see Larson*, 495 F.3d at 1104-07 (concluding that the failure to allow questioning about a mandatory life sentence that a witness would face absent a motion filed by the government violated the Sixth Amendment). As for Nunez's sex crimes, I ruled that Matthews would be able to question Nunez about his felony convictions, but that he could not refer to the nature of the sex crimes with minors under Federal Rule of Evidence 403 and *United States v. Estrada*, 430 F.3d 606, 615-22 (2nd Cir. 2005).[3] ECF No. 405 at 4-6. Matthews has not shown that my evidentiary rulings were erroneous, much less so erroneous that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.

### 2. Ground Seven

In ground seven of his petition, Matthews makes a conclusory assertion of "duplicity." ECF No. 438 at 11. In his reply brief, he explains his argument. ECF No. 454 at 8-9. He contends that 18 U.S.C. § 924(c) criminalizes two separate offenses, one for using or carrying a firearm during and in relation to a drug trafficking crime and another for possessing a firearm in furtherance of a drug trafficking crime. Matthews acknowledges in his reply brief that his appellate counsel declined to raise the issue because it is contrary to Ninth Circuit authority in

---

[3] Despite my ruling, Matthews attempted to tell the jury about Nunez's sex crimes during trial. ECF No. 399 at 280-81.

1   *United States v. Arreola. Id.* In *Arreola*, the Ninth Circuit rejected a similar duplicity argument

2   because it concluded that § 924(c)(1)(A) set forth "multiple ways of committing the same

3   offense," not two separate offenses. 467 F.3d 1153, 1161 (9th Cir. 2006). Matthews therefore

4   cannot show prejudicial error on this ground.

5       **C. Ineffective Assistance of Counsel**

6       In ground five, Matthews contends that trial counsel was ineffective because Yampolsky

7   did not question several witnesses, slept two days of trial, did not respond to the government's

8   jury instructions, did not request a multiple conspiracy instruction that Matthews wanted, and did

9   not subpoena witnesses Matthews wanted. In his reply, Matthews also contends that he wanted

10   to testify but Yampolsky had no questions ready, Yampolsky never visited him to discuss trial

11   strategy, and Yampolsky never tried to negotiate a deal for Matthews. ECF No. 454 at 8. The

12   Government objects to the grounds raised for the first time in Matthews' reply.

13       Typically, an ineffective assistance claim is raised through a § 2255 motion, rather than

14   on direct appeal, "because the claim cannot be advanced without development of facts outside

15   the record." *United States v. Hanoum*, 33 F.3d 1128, 1131 (9th Cir. 1994). To prevail on a claim

16   of ineffective assistance of counsel under § 2255, Matthews must show counsel's performance

17   was deficient and that counsel's deficient performance prejudiced him. *Strickland v. Washington*,

18   466 U.S. 668, 687 (1984). To show deficient performance, Matthews must show that his

19   "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

20   defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011)

21   (simplified). The "proper standard for attorney performance is that of reasonably effective

22   assistance." *Strickland*, 466 U.S. at 687. "When a convicted defendant complains of the

23   ineffectiveness of counsel's assistance, the defendant must show that counsel's representation

1   fell below an objective standard of reasonableness." *Id.* at 687-88.  I review an ineffectiveness

2   claim against the backdrop of the "strong presumption that counsel's representation was within

3   the wide range of reasonable professional assistance." *Stokley v. Ryan*, 659 F.3d 802, 811 (9th

4   Cir. 2011) (quotation omitted).

5         To establish prejudice, Matthews must show that there is a "reasonable probability that,

6   but for counsel's unprofessional errors, the result of the proceeding would have been different."

7   *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine

8   confidence in the outcome." *Id.*  The movant thus does not prove prejudice by listing the things

9   he thinks his attorney should have done, and then speculating that, had he done them, there might

10  have been a different outcome.  Rather, the movant must state the specific facts that, but for

11  counsel's deficient performance, likely would have produced a more favorable result. *James v.*

12  *Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a

13  statement of specific facts do not warrant habeas relief."); *Gonzalez v. Knowles*, 515 F.3d 1006,

14  1015-16 (9th Cir. 2008) ("Gonzalez does not contend that he actually suffered from a mental

15  illness; he merely argues that if tests had been done, and if they had shown evidence of some

16  brain damage or trauma, it might have resulted in a lower sentence.  Such speculation is plainly

17  insufficient to establish prejudice." (emphasis omitted)).

18        I must hold a hearing on a § 2255 motion "[u]nless the motion and the files and records

19  of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see*

20  *also United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984) (stating that a hearing "must

21  be granted unless the movant's allegations, when viewed against the record, do not state a claim

22  for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal");

23  *Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982) (stating that a hearing must be held

if "the record does not affirmatively manifest the factual or legal invalidity of the petitioner's claims"). However, "[m]ere conclusory allegations do not warrant an evidentiary hearing." *Shah v. U.S.*, 878 F.2d 1156, 1161 (9th Cir. 19989).

### 1. Failure to Question Witnesses

Matthews contends Yampolsky was ineffective because he did not question several witnesses at trial. In his petition, Matthews identifies several witnesses that his counsel did not question. ECF No. 438 at 11. Yampolsky explains that he did not question them for strategic reasons because the witnesses did not harm the defense. Matthews has not shown that decision was unreasonable. He does not identify in his petition any questions counsel should have asked or how the expected answers likely would have produced a more favorable result. In his reply, he gives some examples of questions counsel could have asked, but he does not explain how the answers likely would have produced a more favorable result. *See* ECF No. 454 at 8. I therefore deny his motion on this ground because he can show neither deficient performance nor prejudice.

### 2. Sleeping During Trial

Matthews contends Yampolsky slept during trial. Yampolsky denies it. I need not resolve this credibility contest because the trial transcripts show Yampolsky was active during the trial. *See, e.g.*, ECF Nos. 374; 398-402; 405. Jason Margolis also represented Matthews at trial, and Matthews does not contend that Margolis was sleeping. ECF Nos. 398 at 4, 210-11, 220-21. Finally, Matthews has shown no prejudice. I therefore deny his motion on this ground.

### 3. Failure to Respond to Government's Jury Instructions

Matthews asserts that Yampolsky failed to respond to the Government's jury instructions. But he does not identify any instruction Yampolsky should have challenged, on what ground, or how he was prejudiced. To the extent he contends that Yampolsky did not participate in settling

the jury instructions, I disagree. *See* ECF No. 401 at 286-87 (stating "I had a lengthy and fulsome discussion with counsel on both sides" in settling instructions and Yampolsky suggesting additional proposed language for one instruction). I therefore deny his motion on this ground.

### 4. Multiple Conspiracy Instruction

In his supplemental affidavit, Yampolsky stated he did not request a multiple conspiracy instruction because he did not share Matthews' view that it would have helped the defense. According to Yampolsky, the argument was "novel and unsupported by case law." ECF No. 461. Matthews has not shown that Yampolsky's strategic decision not to request the instruction fell below an objective standard of reasonableness. Additionally, he has not shown prejudice. This argument is related to his contention that he was charged with the wrong conspiracy, and the Ninth Circuit already found sufficient evidence to support the conspiracy charge. I therefore deny this portion of his motion.

### 5. Failure to Call Witnesses

Matthews asserts that Yampolsky did not subpoena witnesses, but the only witness Matthews identifies in his petition is Najeeb Rahman. ECF No. 438 at 19. He attaches a declaration from Rahman stating that while Rahman was housed at the Southern Nevada Detention Center, Thomas told him that Matthews had nothing to do with the crime and that Thomas committed the crime with a cousin. *Id.* The Government contends that counsel's decision not to call this witness was reasonable because Rahman has multiple convictions for felony crimes involving fraud and dishonesty. Yampolsky states in an affidavit that is why he chose not to call Rahman. Informed strategic choices about which witnesses to call "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. Yampolsky's strategic decision not to call a

witness with substantial credibility problems does not amount to deficient performance. *See Jackson v. Pugh*, No. 03-34579, 111 F. App'x 451, 453 (9th Cir. July 27, 2004) (holding that a state court "was not objectively unreasonable in determining that counsel's performance was adequate because he made a reasonably informed tactical decision not to call" a witness because, among other reasons, the witness's "credibility would have been seriously challenged as he had been convicted of crimes of dishonesty"). In his motion, Matthews did not identify any other witnesses or how their testimony would have likely changed the outcome. He therefore failed to state a claim for ineffective assistance on this ground.

Matthews' reply identifies some witnesses who apparently would have testified that Thomas steals from and lies to family members, and he contends that counsel should have subpoenaed Matthews' employer, who would have testified that Matthews was at work until 7:00 p.m. the night of the shooting.[4] The Government objects to the identification of these witnesses for the first time in the reply brief.

I "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). But even if I considered the identification of the witnesses raised for the first time in the reply brief, I would deny Matthews' motion. In his affidavit, Yampolsky stated that after investigation, he concluded that these other witnesses would not be helpful. Specifically with respect to the alleged alibi witness, Yampolsky stated that Matthews worked off the books on only a sporadic basis at the auto body shop, and personnel there "were unable to verify dates and/or hours of employ." ECF No. 461 at 1.

---

[4] Matthews does not provide evidence, such as an affidavit from his employer, to support these assertions.

14

Although the complete failure to investigate would constitute ineffective assistance,[5] Yampolsky investigated the alleged alibi and concluded that no witness could credibly support it, and that the other lay witnesses also would not be helpful.  Matthews has not shown that Yampolsky's decisions were objectively unreasonable or that he was prejudiced as a result.  I therefore deny his motion on this ground.

### 6. Issues Raised for the First Time in Reply

Matthews asserts for the first time in his reply brief that he wanted to testify but that he chose not to because Yampolsky had no questions ready. ECF No. 454 at 8.  He also states that Yampolsky never tried to negotiate a deal for Matthews and never visited Matthews to discuss trial strategy. *Id.*  The Government objects to these issues because they were raised for the first time in Matthews' reply brief.

Even liberally construing Matthews' pro se § 2255 motion, these issues were not raised in Matthews' motion.  As a result, I may decline to consider these grounds. *See United States v. Berry*, 624 F.3d 1031, 1039 n.7 (9th Cir. 2010) (concluding that a claim was not within the scope of the certificate of appealability because the defendant "did not identify the claim in either his motion or in his initial supporting memorandum," and the district court did not address it); *Zamani*, 491 F.3d at 997.[6]  However, because Matthews raises colorable claims on two of these

---

[5] "A lawyer who fails adequately to investigate, and to introduce into evidence, information that demonstrates his client's factual innocence, or that raises sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance." *Lord v. Wood*, 184 F.3d 1083, 1093, 1095-96 (9th Cir. 1999) (simplified).

[6] *See also United States v. Lee Vang Lor*, 706 F.3d 1252, 1256 (10th Cir. 2013) (concluding a claim was waived when not mentioned in the § 2255 motion and raised "only in [the] reply brief before the district court"); *Barrett v. United States*, 965 F.2d 1184, 1187-88 (1st Cir. 1992) (holding that the "petitioner's failure to raise the . . . claim in a timely manner below precludes effective appellate review on the merits" where it was raised for the first time in a reply brief to the § 2255 motion).

1 issues, he faces the rest of his life in prison, and any prejudice to the Government can be cured

2 through an evidentiary hearing, I will consider them.

3                                    a.  Right to Testify

4           In his reply brief, Matthews asserts that he wanted to testify in his own defense, but

5 "when it came time Mr. Yampolsky had no questions ready." ECF No. 454 at 8.  Yampolsky's

6 affidavit response is cryptic, stating "Yes, credibility, exposure to cross-examination,

7 temperament, etc." ECF No. 461 at 1.  At trial, Matthews indicated he did not want to testify, and

8 I canvassed him on his waiver of that right. ECF No. 401 at 245-49.  The next day, Matthews

9 announced that he had changed his mind and wanted to testify. ECF No. 402 at 6-7.  He

10 requested time to consult with his attorneys because they were not "prepared, they didn't have

11 questions to ask me or nothin' because they didn't think I was gonna do it, so [I] need just a few

12 minutes to see what questions" his attorneys were going to ask. *Id.* at 7.  I gave Matthews time to

13 consult with his attorneys. *Id.* at 7-8.  After that consultation, Matthews changed his mind again

14 and stated he was not going to testify. *Id.* at 8.  I canvassed him again, at which point Matthews

15 confirmed he would not testify. *Id.* at 8-10.

16           A defendant's "right to testify is a constitutional right of fundamental dimension" that is

17 personal to him. *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993).  "Because the right is

18 personal, it may be relinquished only by the defendant," not counsel. *Id.*  The Ninth Circuit has

19 not addressed whether an attorney's failure to prepare questions for the defendant constitutes

20 deficient performance where the defendant initially indicated he would not testify.  However, the

21 court has considered issues generally surrounding counsel's performance in pretrial and trial

22 preparation and how that may impact a defendant's decision whether to testify. *See, e.g.*, *Rogers*

23 *v. Dzurenda*, 25 F.4th 1171, 1182, 1184-87 (9th Cir. 2022) (stating the failure to prepare

witnesses may constitute deficient performance); *Johnson v. Baldwin*, 114 F.3d 835, 840 (9th Cir. 1997) (holding that an attorney's failure to investigate the defendant's story contributed to the defendant choosing to testify and lie to the jury); *United States v. Tucker*, 716 F.2d 576, 585 (9th Cir. 1983) (finding deficient performance where the attorney failed to cross-examine government witnesses at trial on prior inconsistent statements as a result of the attorney's "failure to investigate and otherwise adequately prepare" a defense).[7]  Ultimately, the question is resolved through the *Strickland* analysis of whether, under the circumstances, counsel's performance was deficient and, if so, whether that deficient performance prejudiced Matthews.

Matthews has raised a colorable claim of ineffective assistance that may have impacted his right to testify in his own defense.  There is some support in the record for Matthews' contention that he wanted to testify but could not because Yampolsky was unprepared.  Absent further factual development, it is unclear whether Yampolsky was in fact unprepared and, if so, at what point Yampolsky knew Matthews would not testify or how adamant Matthews was about not testifying prior to his change of heart.  Consequently, it is not clear whether Yampolsky's decision not to prepare questions (if he did not) was reasonable.  Moreover, it is not clear from the record whether Yampolsky could have adequately led Matthews through his story even if Yampolsky had not prepared specific questions.  Additionally, Matthews would not have been prejudiced by Yampolsky's alleged lack of preparation if he subsequently voluntarily decided not to testify after his discussion with Yampolsky based on other factors such as the considerations Yampolsky mentioned in his affidavit regarding credibility and exposure to cross-

---

[7] *See also Smith v. Gibson*, 197 F.3d 454, 462 (10th Cir. 1999) (assuming deficient performance where the defendant's attorney did not prepare him to testify at sentencing but finding no prejudice).

1  examination.  However, the record does not reflect what happened during that conversation.  I

2  therefore will hold an evidentiary hearing on this claim.

3                                    b.  Plea Deal

4         In his reply brief, Matthews asserts that Yampolsky did not try to negotiate a deal and did

5  not tell him about a plea offer from the Government. ECF No. 454 at 8.  Matthews states that he

6  knew he could not "beat the Government" and that he would have taken a "good deal" to "avoid

7  life" even though he claims he is innocent. *Id.*  In Yampolsky's supplemental affidavit, he states

8  that he presented Matthews with a deal of no more than 20 years, but Matthews rejected it. ECF

9  No. 461 at 1-2.  Yampolsky also states that negotiations with the Government subsequently

10 "stalled" after Matthews started filing pro se motions. *Id.* at 2.

11        An "attorney's failure to communicate the government's plea offer to his client

12 constitutes unreasonable conduct under prevailing professional standards." *United States v.*

13 *Blaylock*, 20 F.3d 1458, 1466 (9th Cir. 1994), *as amended* (May 6, 1994).  If Matthews is to be

14 believed, then Yampolsky was ineffective by failing to convey the offer to him.  Matthews

15 asserts he would have accepted a "good deal," though he does not identify what that means, but I

16 conclude that he has raised an issue as to prejudice as well. *See Jones v. Wood*, 114 F.3d 1002,

17 1012 (9th Cir. 1997) (stating that "to prove prejudice where counsel fails to inform the petitioner

18 about a plea offer, the petitioner must prove there was a reasonable probability he would have

19 accepted the offer").  Consequently, I will hold an evidentiary hearing on this ground to

20 determine whether Yampolsky communicated the plea offer to Matthews and, if he did not,

21 whether Matthews would have accepted the offer had he been told of it.

22 / / / /

23 / / / /

18

c.  Pretrial Consultation

In his reply brief, Matthews asserts that Yampolsky never visited him to discuss trial strategy. ECF No. 454 at 8.  Yampolsky states in his affidavit that he and Margolis met with Matthews on March 15 and April 18, 2019. ECF No. 461 at 1.

"Adequate consultation between attorney and client is an essential element of competent representation of a criminal defendant." *Tucker*, 716 F.2d at 581.  "While the amount of consultation required will depend on the facts of each case, the consultation should be sufficient to determine all legally relevant information known to the defendant." *Id.* at 581-82.

Even if Yampolsky visiting with Matthews only twice falls below an objective standard of reasonableness, Matthews does not identify any prejudice.  He does not state what would have changed had Yampolsky met with him on other occasions.  I therefore deny relief on this claim.

*7. Issues Raised in for the First Time in Supplemental Brief*

I decline to consider the new issues Matthews raises in his supplemental brief. ECF No. 476 at 4.  When I granted the supplemental briefing, I limited it to "addressing only the newly admitted affidavit" of Yampolsky. ECF No. 456 at 2.  I did not allow Matthews to raise wholly new issues.  Matthews could and should have raised those issues earlier.  Consequently, I do not address them.

**D.  Evidentiary Hearing**

Other than the two claims for which I will hold an evidentiary hearing, Matthews' claims were raised and rejected on direct review, procedurally defaulted, contradicted by the record, unsupported, conclusory, or waived.  I therefore need not hold an evidentiary hearing on those claims.

1   As for the two claims for which I will hold a hearing, the Government is directed to

2   contact Matthews to discuss arrangements for the hearing, including (1) whether Matthews

3   agrees to participate in the hearing via videoconference; (2) if not, how long it will take to

4   transport him to Las Vegas; (3) how much time the parties need to prepare for an evidentiary

5   hearing; (4) how long the hearing will last; (5) what witnesses will be presented; and (6)

6   proposed dates for the hearing.  The parties shall file a joint status report on these issues by

7   August 31, 2023.

8   **E.  Conclusion**

9   I THEREFORE ORDER that defendant Louis Matthews' motion under 28 U.S.C. § 2255

10  **(ECF No. 438) is DENIED** as to all grounds except the two I have set for an evidentiary

11  hearing.

12  I FURTHER ORDER that the parties shall file a joint status report by August 31, 2023

13  regarding the evidentiary hearing on Matthews' two remaining grounds for relief.

14  DATED this 27th day of July, 2023.

15

16  _____
    ANDREW P. GORDON

17  UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23